IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA M. GRIFFITH, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>DOLLAR GENERAL CORPORATION and DOLGENCORP, LLC,<br><br>          Defendants. | 2:22-CV-1319-NR |

## OPINION

Over the last 20 years or so, employers have sought to digitize much of the process for onboarding new employees. Rather than handing out paper copies of offers, handbooks, policies, and applications, many employers provide prospective employees and new hires with a URL link. That link takes them to a web-based portal, where, from their computers, they review documents, click on acknowledgements, and electronically submit necessary employment information. In some cases, like this one, one of the documents they are asked to click on is a stand-alone arbitration agreement. The new employee reviews that agreement and can accept it (or sometimes opt out), before clicking "submit," and moving to the next form.

Plaintiff Melissa Griffith e-signed one of these stand-alone arbitration agreements as part of a similar electronic hiring process at Dollar General. Dollar General now seeks to enforce the arbitration agreement under the Federal Arbitration Act to compel this wage-and-hour lawsuit to arbitration. In response, Ms. Griffith has challenged conventional wisdom. In a novel argument, she claims that under the plain terms of the FAA, arbitration agreements are enforceable only if they are "in" another contract. The stand-alone arbitration agreement here wasn't "in"

(*i.e.*, physically within) a so-called "container" contract, and so, she says, the FAA doesn't apply.

After careful review, the Court disagrees. The Court finds that the arbitration agreements here were part of the other documents that Ms. Griffith signed, which, altogether, constitute contractual terms of her at-will employment. That is consistent with the FAA. Because the FAA applies and the agreement is otherwise applicable and enforceable, the Court will grant Dollar General's motion to compel arbitration.

## BACKGROUND

Ms. Griffith sued Dollar General, alleging that Dollar General failed to pay her and similarly situated employees for their full hours worked, in violation of the Pennsylvania Minimum Wage Act (43 Pa. Stat. § 333.101 *et seq*.) and Wage Payment and Collection Law (43 Pa. Stat. § 260.1 *et seq*.). ECF 1-1. Dollar General moved to compel arbitration based on two substantively identical arbitration agreements that Ms. Griffith signed during the onboarding processes for her two periods of employment. ECF 13.

Dollar General uses a web-based system to allow prospective employees with conditional offers of employment to complete the onboarding process before their first day of work. ECF 14-1, ¶ 6. When an employee receives a conditional offer of employment, she receives a unique log-in that permits the employee to access the system and review and sign onboarding documents. *Id.* ¶¶ 7-9. The employee must review various documents and policy acknowledgements and complete them by electronically "signing" the documents with their initials. *Id.* ¶¶ 9-10; ECF 49.

Ms. Griffith completed the onboarding documents before starting both periods of her employment (ECF 14-1, ¶¶ 13-17), including by signing an agreement to arbitrate claims "arising out of [her] employment with Dollar General" (ECF 14-4, p. 2; ECF 14-6, p. 2). The agreement states that it is governed by the Federal Arbitration Act and contains a class-action waiver. ECF 14-4, p. 2; ECF 14-6, p. 2.

Employees can opt out of the arbitration agreement, but employees must complete all onboarding forms, including the arbitration agreement, before beginning work. ECF 14-1, ¶¶ 6, 18; ECF 49-2, p. 14; ECF 49-3, p. 15.

Dollar General moved to compel Ms. Griffith to arbitrate her claims under the FAA. ECF 13. Ms. Griffith contends that the arbitration agreement is unenforceable because it is not an agreement governed by Section 2 of the FAA. ECF 19. After briefing and oral argument, the motion is now ready for disposition.

## LEGAL STANDARD

Courts apply the Rule 56 standard for summary judgment to motions to compel arbitration "when either (1) the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or (2) the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Cepikoff v. Stifel Fin. Corp.*, No. 19-1616, 2020 WL 4937499, at *1 (W.D. Pa. Aug. 24, 2020) (Horan, J.) (cleaned up).

Ms. Griffith's complaint does not suggest that her allegations may be subject to an enforceable arbitration agreement. Nor do her claims rely on any supporting documentation. Thus, the Court will apply the Rule 56 standard, under which the Court will compel arbitration "where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (cleaned up). "Furthermore, in reviewing the record, we are required to view the facts and draw inferences in the light most favorable to the nonmoving party." *Id.* (cleaned up).

The Third Circuit has instructed that, when applying the Rule 56 standard, courts should allow limited discovery before ruling on a motion to compel. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013). But here, the

parties' disagreement is purely legal. No dispute of material fact exists, and to the extent Ms. Griffith relies on relevant facts, she refers to Dollar General's exhibits in its motion to compel. *See* ECF 19, pp. 2-3. Thus, there is no need for limited discovery in this case. *Robertson v. Enbridge (U.S.) Inc.*, No. 19-1080, 2020 WL 9211171, at *2 (W.D. Pa. Aug. 4, 2020) (Lenihan, M.J.).

## DISCUSSION & ANALYSIS

Section 2 of the FAA "describes three kinds of arbitrable agreements," but the relevant kind of agreement here is: "A written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 645-46 (1985) (Stevens, J., dissenting) (cleaned up). "Federal law strongly favors the arbitration of disputes and requires that courts rigorously enforce arbitration provisions." *Wolkenstein v. Citibank*, No. 17-1295, 2018 WL 2230686, at *2 (M.D. Pa. May 16, 2018) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The Court must compel arbitration if it finds that "(1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement." *Id.* at *2 (citation omitted).

Ms. Griffith says that the FAA doesn't apply to her agreements by its plain terms for two reasons: (1) the written arbitration agreements are stand-alone documents that are not "contained in" a written "contract evidencing a transaction involving commerce," and (2) the only written contracts here are the arbitration agreements themselves, which do not refer to wages, so the claims do not "arise" out of any written contract. ECF 19, pp. 2-5, 11-17. She also argues that the class-action waiver is unenforceable. *Id.* at 17-19.

The Court sees things differently. These arguments boil down to an overly narrow reading of the FAA—that the written arbitration agreement must be physically within the container contract. Considering ordinary contract principles,

as the Court must do, the Court finds that the word "in" is better understood to mean "part of." Once that premise is established, the Court can quickly conclude that the FAA applies, and that Ms. Griffith's arguments must fail.

I.  **The FAA applies because the arbitration agreements were part of the terms and conditions of Ms. Griffith's at-will employment relationship.**

Ms. Griffith claims that Section 2 of the FAA only covers written arbitration agreements that are "contained in" a written contract, reasoning that a "'written provision' cannot be 'in' a contract unless that contract is also in writing." ECF 19, p. 3. And in the absence of a written "container contract," Dollar General cannot compel her to arbitrate. *Id.* at 3-4.

But "in" doesn't just mean physically within a written container contract; it is better understood to mean "part of" of another contract. *See, e.g.*, Webster's New International Dictionary of the English Language 1084 (1923) (among other definitions, defining "in" as "Indicating relation to a whole which includes the part spoken of"). This dictionary definition aligns with the likely meaning of "in" that was used when the FAA was passed in 1925. But it also aligns with how contracts are made. Contractual terms can be created by reference, or otherwise implied or documented by other documents or even by the parties' conduct. *See, e.g., Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 942 (Pa. Super. Ct. 2011) ("A contract implied-in-fact is an actual contract which arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." (citation omitted)), *aff'd*, 106 A.3d 656 (Pa. 2014). Since the purpose of the FAA was to "place arbitration agreements on an equal footing with [all] other contracts," it would be incongruous to view the word "in" as exclusively meaning

"within" when referring to an arbitration contract, but to have a wider meaning in the context of any other contract. *Concepcion*, 563 U.S. at 339.

The arbitration agreements here were clearly "part of" Ms. Griffith's at-will employment contract, which was memorialized in the terms and conditions outlined in her written onboarding materials. ECF 49-2; ECF 49-3; *see Hoffman v. Genpact*, No. 22-09, 2022 WL 4134740, at *1 (M.D. Pa. Sept. 12, 2022) (upholding arbitration agreement in collection of online onboarding materials completed by at-will employee on first day of work). She received and completed these onboarding forms before her first day of work as a condition of beginning her employment (ECF 49-1, ¶¶ 9-12; ECF 49-2, p. 14), so those terms—and the arbitration agreements—are binding. *See Keller v. Pfizer, Inc.*, No. 17-1883, 2018 WL 5841865, at *4 (M.D. Pa. Nov. 8, 2018) ("Interpreting Pennsylvania contract law, courts in the Third Circuit have routinely held that a contract entered into as a condition of employment is valid and enforceable against the employee." (citations omitted)).

In addition to agreeing to arbitration, Ms. Griffith accepted conditions of employment regarding anti-discrimination and harassment (ECF 49-2, pp. 5-6); wage, hour, and pay policies (*id.* at 7); and the nature of her employment as at-will (*id.* at 13 ("I understand that . . . all Dollar General employees are employed on an at-will basis.")). *See also* ECF 49-3, pp. 5, 7, 14. In a job verification form, she acknowledged and agreed that completing these onboarding forms was a condition precedent to her employment at Dollar General. ECF 49-2, p. 14 ("As a reminder, employment at Dollar General **is contingent upon**, among other things, successful **completion of the online employment process**[.]" (emphasis added)); ECF 49-3, p. 15 (same). In the same form, she "agree[d] to the conditions of hiring" as outlined

in these materials, including her wage of $9.50/hour. ECF 49-3, p. 15; *see also* ECF 49-2, p. 14 (listing wage for first employment period as $7.50/hour).

The mere fact that Ms. Griffith completed the collection of forms one-by-one on the computer doesn't change the calculus. There would be no dispute about the terms and conditions of her at-will employment, including the arbitration agreements, if Dollar General had printed out and stapled the documents together and provided them to her. Thus, the Court concludes that there is a written arbitration agreement "in" a contract here—specifically the onboarding materials Ms. Griffith had to complete before beginning her employment—so the FAA applies.[1]

## II. The controversy underlying Ms. Griffith's claims "arises out" of her employment contract.

Ms. Griffith also argues that her wage-and-hour claims do not "arise out of" any contract. ECF 19, pp. 12-17. She says that the words "arising out of" in the FAA

---

[1] Since the onboarding materials make clear that Ms. Griffith was paid a wage for her work, the Court rejects her argument that she "did not have a written contract with Dollar General" as an at-will employee, but had an "implied agreement" for work at a wage of $9.50/hour. ECF 19, p. 15 n.13. But even if she is right to call her contract an "implied" one, the Court finds that the plain language of the FAA allows for a written arbitration agreement to be "in" (*i.e.*, part of) an implied contract. Although Section 2 of the FAA says that the arbitration agreement itself must be written, the underlying contract to which it relates doesn't have to be: "A written [arbitration] provision in . . . **a contract** evidencing a transaction involving commerce[.]" 9 U.S.C. § 2 (emphasis added). This language reflects "the fundamental principle that arbitration is a matter of contract," and, of course, not all contracts are written. *Concepcion*, 563 U.S. at 339 (cleaned up). For example, contracts for the sale of goods of more than $500 can be oral contracts and are enforceable if a writing of some kind exists that indicates a contract has been made. 13 Pa. C.S. § 2201(a); *Power Restoration Int'l, Inc. v. PepsiCo, Inc.*, No. 12-1922, 2015 WL 1208128, at *9 (E.D. Pa. Mar. 17, 2015). And for contracts for sales of goods between merchants, which, according to Ms. Griffith, Congress had in mind when drafting the FAA, the requirement for a writing is even more lax. 13 Pa. C.S. § 2201(b); ECF 50, 35:6-12. So it is consistent with the FAA for there to be a written arbitration agreement incorporated by reference or otherwise part of a separate implied contract, such as an implied employment contract. *See Alexander v. Hargrove*, No. 93-5510, 1994 WL

are meant to "refer only to actions on contract." ECF 19, p. 14 (cleaned up). And since the arbitration agreements themselves are the only "contracts" here and have nothing to do with wages and hours, she argues, there is no arbitrable controversy arising out of any Section 2 contract. *Id.* at 14-15.

This argument fails as a factual matter. As explained, there is a contract here that governs Ms. Griffith's employment, including her wages and hours. Among her onboarding forms is a wage-and-hour policy acknowledgment, which states, "I understand that it is Company policy and State and Federal law that . . . employees are to be paid for all hours worked." ECF 49-2, p. 7. It also states, "I further acknowledge that I should contact the Employee Response Center . . . to report any violation of these policies." *Id.* Ms. Griffith signed that form before beginning work. *Id.* She also signed the job information verification form, agreeing to be paid a wage of $9.50/hour. ECF 49-3, p. 15.

Likewise, the arbitration agreements that she signed cover "any legal claims or disputes that [she] may have against Dollar General . . . arising out of [her] employment with Dollar General," including "claims alleging violations of wage and hour laws[.]" ECF 49-2, p. 25. This language, coupled with the signed wage-and-hour policy acknowledgment and job verification forms, are clear evidence that any disputes Ms. Griffith has with Dollar General over wages and hours "arise out of" her employment contract. *Kauffman v. U-Haul Int'l, Inc.*, No. 16-4580, 2018 WL 4094959, at *11-12 (E.D. Pa. Aug. 28, 2018) (finding Pennsylvania wage-and-hour claims within the scope of similarly broad arbitration provision).[2]

---

444732, at *2 (E.D. Pa. Aug. 16, 1994) ("Pennsylvania courts have recognized that employment relationships are contracts, even those that are at-will.").

[2] For that same reason, the Court rejects the argument that Ms. Griffith's claims arise out of a duty under the Pennsylvania minimum wage statutes. ECF 19, p. 15. Her onboarding documents list her wage rate.

Since the FAA applies to Ms. Griffith's employment contracts, and her wage-and-hour dispute arises out of those contracts, the Court concludes that the arbitration agreements are enforceable and that Dollar General may compel arbitration.

### III.   The class-waiver provision is enforceable.

Finally, Ms. Griffith contests the class-action waiver provision in her arbitration agreements. That waiver states that Ms. Griffith "may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement or in any other forum," but that she could "bring individual claims or multi-plaintiff claims" to arbitration. ECF 49-3, p. 26. She argues that this provision as a matter of contract law is illegal and void[3] in Pennsylvania because it violates her right to "engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection," as provided in the Pennsylvania Labor Relations Act (43 P.S. § 211). ECF 19, pp. 17-19. The Court disagrees.

As a rule, "arbitration is a matter of contract," and "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S.

---

[3] Ms. Griffith specifically alleges that the provision is "illegal." That's different from arguing the provision is "unconscionable," so the Court need not and does not engage in an unconscionability analysis. That said, the Court doesn't see anything from the terms of the arbitration agreements that would suggest that they are substantively unconscionable, and the fact that Ms. Griffith could have easily "opted out" makes it unlikely that they were procedurally unconscionable. *See Stephenson v. AT&T Servs., Inc.*, No. 21-0709, 2021 WL 3603322, at *7 (E.D. Pa. Aug. 13, 2021) ("[T]he presence of an opt-out provision seriously undermines the contention that an arbitration agreement is procedurally unconscionable. Several courts have declined to find arbitration agreements procedurally unconscionable where an opt-out provision gave the plaintiff the ability to reject the agreement without repercussion." (cleaned up; collecting cases)).

228, 233 (2013). Pennsylvania law similarly favors arbitration. *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1096 (Pa. Super. Ct. 2015). Given that guidance, the Court must "respect and enforce the parties' chosen arbitration procedures," which in this case "indicat[es] their intention to use individualized rather than class or collective action procedures." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

To that end, the PLRA does not prohibit a class-action waiver, especially in the context of an arbitration agreement. "The stated purposes of the PLRA are to encourage the practice of collective bargaining and to protect the exercise of freedom of association, self-organization, and designation of representatives, for the purpose of negotiating the terms and conditions of employment." *Ellwood City Police Wage & Pol'y Unit v. Penn. Lab. Rels. Bd.*, 736 A.2d 707, 710 (Pa. Commw. Ct. 1999). "However, neither the PLRA nor Act 111 was intended to protect every work procedure negotiated that may impact the exercise of those rights." *Id.* The Supreme Court reached the same conclusion in interpreting the federal analogue to the PLRA (with almost identical language), finding that engagement in "other concerted activities" referred to "things employees 'just do' for themselves in the course of exercising their right to free association in the workplace, rather than the highly regulated, courtroom-bound 'activities' of class and joint litigation." *Lewis*, 138 S. Ct. at 1625 (cleaned up).

Nothing in the class-action waiver prohibits Dollar General employees from collective bargaining or self-organizing. It merely governs the procedure for the arbitration to which Ms. Griffith and other signees agreed by limiting claims to individual ones, not class-wide ones. The Court must respect the parties' chosen procedure.

Thus, the Court finds that the class-action wavier in Ms. Griffith's arbitration agreements is neither illegal nor void, and so will enforce the terms of the contract to which Ms. Griffith agreed.

## CONCLUSION

For the reasons above, the Court will grant Dollar General's motion to compel arbitration (ECF 13). Ms. Griffith has not applied for a stay, and Dollar General has asked for a stay only in the alternative of dismissal. The Court will therefore compel arbitration and dismiss this case with prejudice. *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 338 (W.D. Pa. 2020) (Ranjan, J.). An appropriate order follows.

DATED: October 5, 2023                         BY THE COURT:

                                               /s/ *J. Nicholas Ranjan*
                                               United States District Judge